IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| JEFFREY R KUNIN, M.D.; | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:17-00945-CV-RK |
| | ) |
| SAINT LUKE'S HEALTH SYSTEM, INC., | ) |
| SAINT LUKE'S PHYSICIAN GROUP I, | ) |
| LLC, SAINT LUKE'S HOSPITAL OF | ) |
| KANSAS CITY, INC., SAINT LUKE'S | ) |
| NORTHLAND HOSPITAL | ) |
| CORPORATION, SAINT LUKE'S | ) |
| SOUTH HOSPITAL, INC., SAINT | ) |
| LUKE'S EAST HOSPITAL, SAINT | ) |
| LUKE'S OF TRENTON, INC., SAINT | ) |
| LUKE'S HOSPITAL OF GARNETT, INC., | ) |
| SAINT LUKE'S HOSPITAL OF | ) |
| CHILLICOTHE, INC., SAINT LUKE'S | ) |
| CUSHING HOSPITAL, INC., | ) |
| | ) |
| Defendants. | ) |

# ORDER

Plaintiff Jeffrey Kunin ("Relator") brings this *qui tam* action against Saint Luke's Health System, Inc., Saint Luke's Physician Group I, LLC, St. Luke's Hospital of Kansas City, Inc., Saint Luke's Northland Hospital Corporation, Saint Luke's South Hospital, Inc., Saint Luke's East Hospital, Saint Luke's of Trenton, Inc., Saint Luke's Hospital of Garnett, Inc., Saint Luke's Hospital of Chillicothe, Inc., and Saint Luke's Cushing Hospital, Inc. (collectively "Defendants") alleging they compensated certain physicians in violation of the Physician Self-Referral Law (the "Stark Law") resulting in violations of the False Claims Act ("FCA"). (Doc. 1.) Defendants argue Relator's allegations of fraud should be dismissed due to insufficiently particular pleading. (Doc. 47.) Because Relator has failed to allege fraud with the level of particularity required by Rule 9(b) of the Federal Rules of Civil Procedure, the Court **GRANTS** Defendants' motion to dismiss.

**Background**

Relator filed a six-count complaint against Defendants alleging violations of the FCA, 31 U.S.C. § 3729(a)(1)(A), (B), (C), & (G).[1] (Doc. 1 at 36-41.) Relator's primary allegation is that since 2010, Defendants' compensation scheme for certain physicians (the "Cardiologists") has violated the Stark Law, 42 U.S.C § 1395nn, and thus, all related claims presented to Medicare for reimbursement violated, and continue to violate, the FCA.

**I. The Stark Law and the FCA**

By way of overview, the Stark Law prohibits a physician from referring a patient for "designated health services" ("DHS") when that physician "has a financial relationship with [the referral] entity" and "for which payment otherwise may be made under Medicare." *See* 42 U.S.C. § 1395nn(1)(a); 42 C.F.R. § 411.353(a). Further, under § 1395nn(a)(1)(B), the referral entity is prohibited from presenting or causing to be presented a claim for DHS furnished pursuant to a prohibited referral. There are, however, exceptions to prohibited referrals. Most relevant here is when a bona fide employment relationship exists between the physician and the referral entity. *See* 42 C.F.R. § 411.357(c). To qualify for the bona fide employment relationship exception, a physician's compensation, among other requirements, cannot "take[] into account the volume or value of referrals by the referring physician." *Id.* at § 411.357(c)(2)(ii). Thus, the Stark Law applies to the underlying compensation scheme, not the subsequent claim for payment.

Conversely, the FCA "is not concerned with regulatory noncompliance," but rather "protect[s] the federal fisc by imposing severe penalties on those whose false or fraudulent claims cause the government to pay money." *United States ex rel. Benaissa v. Trinity Health*, 963 F.3d 733, 739 (8th Cir. 2020) (citation omitted). As such, the FCA does not apply to the underlying

---

[1] The FCA, in relevant part, imposes civil liability on any person who:

(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;
(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;
(C) conspires to commit a violation of subparagraph (A), (B), . . . or (G);
[. . .];
(G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government,

31 U.S.C. § 3729(1).

compensation scheme, but rather the subsequent claim for payment. *See United States ex rel. Strubbe v. Crawford Cty. Mem'l Hosp.*, 915 F.3d 1158, 1163 (8th Cir. 2019) ("The FCA attaches liability, not to the underlying fraudulent activity, but to the claim for payment.") (citation omitted). Thus, because the Stark Law and FCA address different governmental interests, allegations of a Stark Law violation are distinct from allegations of a false claim for payment.

As relevant in this case, an FCA violation arises when a claim in violation of the Stark Law is submitted for reimbursement under Medicare. The Medicare program was established by the Social Security Act of 1965 and created to provide qualifying patients with financial assistance for medical expenses. *See U.S. ex rel. Dunn v. N. Mem'l Health Care*, 739 F.3d 417, 418 (8th Cir. 2014). Health care providers that seek reimbursement under Medicare must comply with Medicare regulations and submit claims to the Center for Medicare and Medicaid Services ("CMS"). *Id.* Defendants' execution of this process – the submission of allegedly false claims to CMS and the certification that Defendants complied with the regulations – forms the basis of Relator's claim that Defendants violated, and continue to violate, the FCA.

## II. Relator's Allegations

For purposes of ruling on this motion to dismiss, the Court accepts as true the factual allegations contained in Relator's complaint.[2] The relevant allegations are summarized below.

### A. Relator's Allegations that Defendants' Compensation Scheme Violated the Stark Law

Defendant Saint Luke's Physician Group I, LLC ("SLCC")[3] employs the Cardiologists and compensates them under an "equal share" system. (Doc. 1 ¶ 87.) Defendants employ two tiers of Cardiologists: Principal Physicians and Associate Physicians. (*Id.*) Associate Physicians receive only a base salary, while Principal Physicians are eligible for bonuses. (*Id.*) The base salary for all cardiologists is determined in advance through SLCC's annual budget process and varies year to year based on the prior year's financial performance. (*Id.* ¶ 88.) Thus, because the "volume or

---

[2] Although the Court accepts the factual allegations in the complaint as true, the legal conclusions and bare allegations in the complaint that are unsupported by factual allegations are not entitled to the presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).

[3] The Complaint notes that "Saint Luke Physicians Group I, LLC, ("SLPGI"), which has and continues to do business as Saint Luke's Cardiovascular Consultants [SLCC], is a Kansas Limited Liability Company, doing business in Kansas and Missouri. SLPGI was formed on December 27, 2016, and effective on December 31, 2016, it became the successor-in-interest to SLCC, Inc." The Complaint uses the abbreviations SLPGI and SLCC throughout. For simplicity, the Court will use SLCC for allegations related to either entity.

3

value" of referrals is a factor affecting a prior year's financial performance, referrals are a factor when setting the base salary. (*See id.* ¶ 94; *id.* at 3-4.) Bonuses are awarded based on a Cardiologist's performance metrics. (*Id.* ¶ 90.) One of these metrics is whether SLCC's annual budget revenues are met. (*Id.* ¶ 91.) If this metric is met, all Principal Physicians receive an equal bonus from the funds above SLCC's projected revenues. (*Id.* at ¶¶ 90-91.) These are referred to as "pooled funds." (*Id.*) Thus, because the "volume or value" of referrals is a factor affecting whether projected revenues are exceeded, referrals are a factor when distributing bonuses from the pooled funds. (*See id.* ¶ 94; *id.* at 3-4.)

Further, beginning in in 2010, Defendants have required the Cardiologists to sign "exclusive service and non-competition provisions" prohibiting them from "performing services at any hospital, practice or other medical entity that compete[s] with [Defendants]." (*Id.* ¶¶ 81-82.) This establishes a "referral mandate" favoring Defendants – and by implication, the Cardiologists. (*See Id.*) As a result, the Cardiologists are "paid compensation that is not fair market value, is not commercially reasonable and varies with and takes into account the volume or value of their referrals." (*Id.* at 132.)

Similarly, Relator alleges Defendants' compensation scheme is commercially unreasonable because it relies on a "strategic offset" and "contributions and grants" from the Defendants' other entities. (*Id.* at 4; *id.* ¶¶ 94, 103-105, 108.) Specifically, Relator alleges:

> [b]ecause the "grants" from [Defendants'] other entities were a part of the annual SLCC budget from which the Cardiologists' salaries and bonuses are derived, the Cardiologists, who send DHS referrals to [Defendants' other entities], are incentivized to also increase DHS referrals to obtain an increase in their budget and therefore their annual salaries and bonuses.

(*Id.* ¶ 117.) Accordingly, Defendants set base salaries and awarded bonuses "by illegally considering the volume or value of the Cardiologists' referrals" of DHS in violation of the Stark Law. (*Id.* at 4.)

Relator obtained personal knowledge concerning Defendants' compensation scheme through membership on compensation and budget committees. (*See id.* ¶¶ 66-68.) Specifically, Relator served as:

> Chair of the St. Luke's Physician Compensation Committee from September 2014 to June 2016; a Member of St. Luke's Physician Enterprise Steering Committee from April 2015 to June 2016; a Member of St. Luke's Strategy Deployment Process Committee from February 2015 to January 2016; a Member of St. Luke's Physician Enterprise Budget Subcommittee from February 2016 to December

2016); the Chair of St. Luke's Physician Enterprise, Physician Engagement and Development Committee from September 2015 to December 2016); and a Member of the Advisory Board of Saint Luke's Physician Specialists from November 2011 to June 2016.

(*Id.* ¶ 66.) These committee positions "provided [Relator] direct knowledge of [Defendants'] physician employment relationships and physician compensation structures." (*Id.* ¶ 65.) More importantly, it provided "knowledge of the illegality of the Cardiologists' compensation structure." (*Id.* at 70.)

### B. Relator's Allegations that Defendants Presented False Claims in Violation of the FCA

Relator's principal allegation is that "every claim [Defendants] submitted to, or payment received from, Medicare or Medicaid for DHS referred to any of its entities by the Cardiologists since May 1, 2010, has violated the Stark Law and constitutes a false claim in violation of the FCA." (*Id.* at 4.) In support, Relator points to Medicare and Medicaid reimbursement procedures. Relator alleges the following.

First, when Defendants "submit or cause to be submitted Medicare Part A claims for interim reimbursement for services" this requires them "to submit patient-specific claims for interim payments." (*Id.* ¶ 25.) Second, in addition to interim payments, CMS requires Defendants "to submit an annual 'Hospital Cost Report'" declaring its annual Medicare reimbursement "for items and services provided to Medicare beneficiaries that year." (*Id.* ¶ 26.) This process includes certifying that the Cost Report is true and accurate and complies with applicable laws and regulations. (*See Id.* ¶¶ 28-29.) Third, Defendants, including the Cardiologists, "submit[ted] Medicare Part B claims to CMS." (*Id.* ¶ 32.) Reimbursements filed under Medicare Part B require similar certifications that the filing complied with applicable law and regulations, including the Stark Law. (*Id.* ¶ 34-35.) Lastly, Defendants participate in the Medicaid programs in both Kansas and Missouri. (*Id.* ¶ 38.) As part of this participation,

> Kansas and Missouri require St. Luke's participating health providers to file cost reports on the same forms as required by Medicare; St. Luke's cost reports to the Medicaid programs of Kansas and Missouri contain the same certifications as the Medicare cost reports discussed above.

(*Id.* ¶ 39.) Therefore, each named Defendant has allegedly "violated [the] False Claims Act, [] by submitting the above-referenced claims for payment for DHS to Medicare or Medicaid because they were prohibited by the Stark Law." (*Id.* ¶ 136.)

5

**Legal Standard**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a claim may be dismissed for "failure to state a claim upon which relief can be granted." A complaint must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Generally, the Court "accept[s] the allegations contained in the complaint as true and draw[s] all reasonable inferences in favor of the nonmoving party." *Cole v. Homier Dist. Co.*, 599 F.3d 856, 861 (8th Cir. 2010) (quoting *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005)). The principle that a court must accept as true all the allegations contained in a complaint does not apply to legal conclusions, however. *Iqbal*, 556 U.S. at 678. In other words, to state a claim, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Id.* at 678.

"Because the FCA is an anti-fraud statute, complaints alleging violations of the FCA must comply with Rule 9(b) of the Federal Rules of Civil Procedure." *Benaissa*, 963 F.3d at 738-39 (citing *Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006)) (internal quotation marks omitted). Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake." "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "This particularity requirement demands a higher degree of notice than that required for other claims, and is intended to enable the defendant to respond specifically and quickly to the potentially damaging allegations." *Benaissa*, 963 F.3d at 739 (quoting *United States ex rel. Costner v. URS Consultants, Inc.*, 317 F.3d 883, 888 (8th Cir. 2003)) (internal quotation marks omitted). To satisfy the particularity requirement, "the complaint must plead such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result." *Id.* (quoting *Joshi*, 441 F.3d at 556). "Put another way, the claim must identify who, what, where, when, and how." *Joshi*, 441 F.3d at 556 (citing *Costner*, 317 F.3d at 888) (internal quotation marks omitted).

**Discussion**

Relator's Complaint contains six counts against Defendants. Counts I-III are against Saint Luke's Health System, Inc., Saint Luke's Physician Group I, LLC, and the "St. Luke's Hospitals"[4]

---

[4] Relator's Complaint groups the individual hospital entities under the label "St. Luke's Hospitals." (*See* Doc. 1 ¶ 12-19.) These entities include, Saint Luke's Hospital of Kansas City, Inc., Saint Luke's

for violations of § 3729(a)(1)(A); Count IV is against all Defendants for violations of § 3729(a)(1)(B); Count V is against all Defendants for violations of § 3729(a)(1)(G); and Count VI is against all Defendants for violations of § 3729(a)(1)(C). For the reasons discussed below, the Court finds each count fails to meet the pleading requirements of Rule 9(b), and therefore, must be dismissed.

### I. Counts I-III – The § 3729(a)(1)(A) Claims

In Counts I through III, Relator brings claims for violations of § 3729(a)(1)(A) of the FCA. Section 3729(1)(a)(A) imposes liability on anyone who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." The touchstone of § 3729(1)(a)(A) liability is presentment. That is, a plaintiff must "allege with particularity that the defendant presented, or caused to be presented, a claim for payment or approval." *Benaissa*, 963 F.3d at 739. An adequate showing, however, does not require plaintiffs to allege, in detail, every purportedly fraudulent reimbursement claim. *Id.* Rather, there must be enough particularity to give a defendant notice to respond to the claim that the defendant presented false claims for payment. *Id.* (citing *Strubbe*, 915 F.3d at 1163). A plaintiff satisfies the presentment requirement by pleading "(1) representative examples of the false claims, or (2) the details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Id.* (internal quotation marks omitted). Here, Relator fails to satisfy either requirement.

#### A. Relator Has Failed to Establish Representative Examples of False Claims

In examining whether Relator pleaded representative examples of false claims, the Court notes Relator alleged only that "every claim [Defendants] submitted to, or payment received from, Medicare or Medicaid for DHS referred to any of its entities by the Cardiologists since May 1, 2010, has violated the Stark Law and constitutes a false claim in violation of the FCA." (Doc. 1. at 4.) The Eighth Circuit has routinely rejected similar allegations as insufficient to satisfy § 3729(1)(a)(A)'s presentment requirement.

In *Joshi*, the Eighth Circuit rejected allegations that "all the nurse anesthetists' work was illegal, and that every invoice for nurse anesthetist work was fraudulent." 441 F.3d at 556 (internal quotation marks omitted). The *Joshi* court noted that "assuming *arguendo* the complaint can be

---

Northland Hospital Corporation, Saint Luke's South Hospital, Inc., Saint Luke's East Hospital, Inc., Saint Luke's Hospital of Trenton, Inc., Saint Luke's Hospital of Garnett, Inc., Saint Luke's Hospital of Chillicothe, Inc., Defendant Saint Luke's Cushing Hospital, Inc. (*Id.*)

interpreted to have alleged 'every' claim was fraudulent, Rule 9(b) requires more than such conclusory and generalized allegations." *Id.* at 557; *accord Benaissa*, 963 F.3d at 740; *see also Dunn*, 739 F.3d at 420 ("Dunn may not simply rely on the generalized conclusion that North Memorial engaged in noncompliant conduct, and in doing so, caused thousands of instances of fraudulent billing."). Relator's allegations are no different, and thus, under Eighth Circuit precedent, must be dismissed.

Despite Relator's claim to the contrary, he has not "provided specificity about the actual false claims at issue." (Doc. 56 at 12.) While Relator "alleged [the compensation] scheme was in place from the time the Cardiologists' former practice was acquired in 2010 and provided detailed information about the remuneration scheme in years 2011 through 2017," Relator has not alleged with particularity circumstances surrounding the submission of any false claims. (*See id.*) Instead, Relator has attempted to plead in detail the underlying compensation scheme, which Relator alleges violates the Stark Law, as a substitute for any particularity concerning the presentment of a false claim under the FCA. However, the Eighth Circuit has repeatedly found this formulation insufficient. *See, e.g.*, *Benaissa*, 963 F.3d at 740 (citing *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1012-13 (11th Cir. 2005)) ("it was insufficient to describe in detail a private scheme to defraud and then speculate that claims must have been submitted, were likely submitted or should have been submitted to the Government.") (cleaned up).

FCA liability attaches to the claim for payment, not to the particularities of an allegedly fraudulent compensation scheme. *See Strubbe*, 915 F.3d at 1163. Here, however, Relator's conclusory and generalized allegations of fraud do not sufficiently plead facts giving rise to FCA liability. In other words, Relator has attempted to plead FCA liability based on the particularities of Defendants' compensation scheme rather than pleading representative examples of false claims. Accordingly, even accepting Relator's factual allegations as true and drawing all reasonable inferences in his favor, the Complaint fails to allege any representative examples of false claims.

### B. Relator Has Failed to Establish Indicia of Reliability that Claims Were Actually Submitted.

In determining whether Relator pleaded "details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted," the Court again turns to *Benaissa*. 963 F.3d at 739. In *Benaissa*, the relator alleged that the defendant hospital's compensation scheme paid physicians for referrals in violation of the Stark and Anti-Kickback Laws. *Id.* at 737. The plaintiff alleged that these underlying violations "resulted in the

presentment of false or fraudulent claims to the government, in violation of the FCA." *Id.* In determining whether the plaintiff provided the required indicia of reliability, the *Benaissa* court considered the plaintiff's "basis for knowledge regarding the submission of fraudulent claims." *Id.* at 740 (internal quotation marks omitted). The *Benaissa* court noted that the plaintiff offered only two general facts to support the FCA claim: (1) the hospital's "receipt of a large Medicare reimbursement"; and (2) the "allegation that every claim submitted by certain physicians was false or fraudulent—to draw the conclusion that Trinity most likely submitted false claims to the government." *Id.* The *Benaissa* court found these general inferences insufficient under Rule 9(b)'s particularity requirement. *Id.*

Relator maintains that "his service on the compensation committee" and the "information about illicit physician remuneration" are sufficient to show "the particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." (Doc. 56 at 15-16.; *see also* Doc. 1 ¶¶ 65-70.) Again, however, Realtor's position does not align with Eighth Circuit precedent.

In *Benaissa*, the court noted that, as a trauma surgeon, the plaintiff had neither "firsthand knowledge of Trinity's billing practices," nor "ple[d] details about Trinity's billing practices indicating a reliable 'basis for knowledge' regarding the submission of fraudulent claims." 963 F.3d at 740. In *Joshi*, the court noted that "Dr. Joshi was an anesthesiologist at St. Luke's, not a member of the billing department." 441 F.3d at 557. In *U.S. ex rel. Thayer v. Planned Parenthood of the Heartland*, the court stated, "Thayer does not allege that she had access to the billing systems of the unidentified local hospitals, nor does she contend that she had knowledge of their billing practices." 765 F.3d 914, 919 (8th Cir. 2014); *see also Dunn*, 739 F.3d at 420 (holding similarly).

Similarly, here, Relator is a radiologist, not a member of the billing department. Relator does not allege firsthand knowledge of Defendants' billing system and fails to allege even one example of an actual false claim that was submitted for reimbursement. Moreover, Relator's service on numerous committees does not, by itself, provide "reliable indicia that lead to a strong inference that claims were actually submitted." None of the positions Relator held demonstrate knowledge of Defendants' billing practices, and Relator does not otherwise allege such knowledge. (*See* Doc. 1 ¶¶ 65-70.) Relator alleges only that the positions "provided him direct knowledge of [Defendants'] physician employment relationships and physician compensation

9

structures." (*Id.* ¶ 65.) However, these allegations are relevant to the alleged Stark Law violation, not to the presentment of false claims under the FCA. As noted above, the FCA is concerned only with the claim for payment. As such, Relator's allegations do not provide the "basis for knowledge" required under Eighth Circuit precedent in the FCA context, and thus, must be dismissed.

Relator argues this outcome "limit[s] FCA claims to a discrete class of whistleblowers: billing clerks." (Doc. 56 at 16.) A similar argument was raised in *Benaissa* and rejected. *See* 963 F.3d at 741. There, the Eighth Circuit "recognized that an insider might have an easier time obtaining information about billing practices and meeting the pleading requirements under the FCA," but reasoned its holdings in the FCA context "have not precluded others with reliable allegations from serving as relators." *Id.* (cleaned up). The Court agrees and does not interpret the above cases to create a categorical rule that allows only billing clerks to bring FCA claims. The Court thus finds Realtor has failed to allege "the particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Benaissa*, 963 F.3d at 739. The *Benaissa* court noted that individuals outside the billing department could serve as relators if they alleged "dates that services were fraudulently provided or recorded, by whom, and evidence of the department's standard billing procedure." *Id.* Even accepting Relator's allegations as true and drawing all reasonable inferences in his favor, Relator has failed to allege any such particulars here.

Accordingly, because Relator has failed to meet the pleading requirements under Rule 9(b), Counts I-III are dismissed.

## II. Count IV – The § 3729(a)(1)(B) Claim

In Count IV, Relator brings claims for violations of § 3729(a)(1)(B) of the FCA. Section 3729(1)(a)(B) imposes liability on anyone who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." Fraudulent inducement claims under § 3729(a)(1)(B) do not require proof that a false claim was submitted (i.e., no presentment), however, "relators must still plead a connection between the alleged fraud and an actual claim made to the government." *Strubbe*, 915 F.3d at 1166 (quotation marks and citation omitted). The elements of fraudulent inducement under § 3729(a)(1)(B) are: "(1) the defendant made a false record or statement; (2) the defendant knew the statement was false; (3) the statement

was material; and (4) the statement made a claim for the government to pay money or forfeit money due." *Benaissa*, 963 F.3d at 741 (quotation marks and citation omitted).

Relator's primary allegation supporting Count IV is that Defendants certified they complied with applicable laws and regulations under Medicare Parts A and B when they submitted claims to CMS for reimbursement.[5] (*See* Doc. 1 ¶¶ 25-35, 161.). Relator alleges it was these false statements that induced the government to reimburse false claims. Realtor's Complaint, however, fails to connect the alleged false records or statements to any reimbursement claim made to the government.[6]

In *Thayer v. Planned Parenthood of the Heartland, Inc.* (*Thayer II*), the plaintiff alleged that Planned Parenthood misrepresented that it complied with all relevant law when submitting claims for reimbursement. 11 F.4th 934, 938-39 (8th Cir. 2021). The Eighth Circuit rejected the argument that this action induced the government to reimburse a false claim. *Id.* Specifically, the *Thayer II* court considered Rule 9(b)'s heightened pleading standard, noting that a "relator must state 'when the acts occurred, who engaged in them, and what was obtained as a result.'" *Id.* at 939. In this respect, the *Thayer II* court found the complaint "was not particular enough." *Id.*

Similarly, in *Benaissa*, the court rejected a claim under § 3729(a)(1)(B). The court held that because the plaintiff "failed to allege with particularity that Trinity submitted a claim for payment to the government, he [could not] establish that Trinity's allegedly false statements were 'material' to any claim that was actually submitted." *Benaissa*, 963 F.3d at 741-42. The *Benaissa* court summarized the plaintiff's § 3729(a)(1)(B) allegations, stating:

> Dr. Benaissa alleges that Trinity submitted provider agreements and annual cost reports to the government that were necessary to participate in the Medicare program, and that these agreements and reports falsely stated that Trinity had not violated and would not violate the Stark and Anti-Kickback laws. He contends that these were false statements material to false or fraudulent claims in violation of 31 U.S.C. § 3729(a)(1)(B).

*Id.* at 738. The allegations in *Benaissa* are analogous to the allegations made by Relator here. Relator alleges only that Defendants certified that they complied with applicable laws and

---

[5] Even if the Court assumes the compensation scheme of the Cardiologists violated the Stark law, Relator fails to meet the pleading requirement under Rule 9(b).

[6] Relator makes the bare allegations that (1) "St. Luke's Hospitals submit or cause to be submitted Medicare Part A claims for interim reimbursement for services," and (2) "the Cardiologists . . . submit Medicare Part B claims to CMS." (Doc. 1 ¶¶ 25, 32.) Neither the complaint nor the attached exhibits to the complaint state when the acts occurred, who engaged in them, and what was obtained as a result. *See Benaissa*, 963 F.3d at 739 (quoting *Joshi*, 441 F.3d at 556).

11

regulations. Relator has neither alleged with particularity that these false statements were "material" to any claim actually submitted, nor stated "when the acts occurred, who engaged in them, and what was obtained as a result." *See Thayer II*, 11 F.4th at 939.

Even accepting Relator's allegations as true and drawing all reasonable inferences in his favor, Relator has failed to meet the heightened pleading requirements of Rule 9(b). Accordingly, Count IV must be dismissed.

### III. Count V – The § 3729(a)(1)(G) Claim

In Count V, Relator brings claims for violations of § 3729(a)(1)(G) of the FCA. Section 3729(a)(1)(G) is the FCA's reverse false claims provision and imposes liability on anyone who "knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." The Eighth Circuit has held that Rule 9(b)'s particularity requirement applies to claims under § 3729(a)(1)(G). *See Olson v. Fairview Health Servs. of Minnesota*, 831 F.3d 1063, 1074 (8th Cir. 2016). More importantly, the *Olson* court held there can be no reverse false claim liability under § 3729(a)(1)(G) when the allegations of fraud are insufficient. *See id.* at 1074; *see also United States ex rel. Benaissa v. Trinity Health*, No. 4:15-CV-159, 2018 WL 6843624, at *13 (D.N.D. Dec. 31, 2018) (applying the same).

Accordingly, because the Court finds Relator's allegations insufficient under subsections (a)(1)(A) and (a)(1)(B), Count V must also be dismissed.

### IV. Count VI – The § 3729(a)(1)(C) Claim

In Count VI, Relator brings claims for violations of § 3729(a)(1)(C) of the FCA. Section 3729(a)(1)(C) imposes liability on anyone who "conspires to commit a violation of subparagraph (A), (B), . . . or (G)." The elements of a § 3729(a)(1)(C) claim are: (1) the existence of an agreement between defendants to get a false or fraudulent claim paid by the government; and (2) an overt act in furtherance of that conspiracy. *See Strubbe*, 915 F.3d at 1166 (citing *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 193 (5th Cir. 2009)). Rule 9(b)'s particularity requirement applies to conspiracy claims under the FCA. *Id.*

Relator has failed to allege the existence of a conspiracy because the Complaint does not include details of an agreement between the Defendants. The closest allegation the Court can construe to be an agreement is the "strategic offset" and "contributions and grants" from Defendants' other entities. (Doc. 1 at 4; *id.* ¶¶ 94, 103-105, 108, 128). However, these facts alone are insufficient to establish a conspiracy under Rule 9(b)'s particularity requirement. Further,

12

because the Court finds Relator's allegations insufficient under subsections (a)(1)(A), (a)(1)(B), and (a)(1)(G), Relator has not sufficiently alleged Defendants violated subsection (a)(1)(C). *See Olson*, 831 F.3d at 1075 (finding because there was no violation under (a)(1)(A), (a)(1)(B), and (a)(1)(G), there could be no violation under (a)(1)(C)). Accordingly, Count VI must be dismissed.

## Conclusion

Because Relator has failed to meet the particularity requirements of Rule 9(b), Defendants' motion to dismiss is **GRANTED**. This case is **DISMISSED without prejudice.**

/s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: April 25, 2022